## UNITED STATES *v.* OREGON LUMBER COMPANY ET AL.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 40.   Argued October 9, 1922.—Decided November 27, 1922.

Where the Government sued to annul land patents upon the ground of fraud, and persisted in the suit after the defendant had pleaded in bar the statute of limitations applicable to such cases, and the plea was sustained and the bill dismissed, *held,* that the Government had elected its remedy, and therefore could not afterwards maintain an action at law to recover damages for the fraud. P. 294.

QUESTIONS certified by the Circuit Court of Appeals, arising upon review of a judgment of the District Court which dismissed the complaint in an action brought by the United States to recover damages for fraud in procuring patents to public land.

*Mr. Assistant Attorney General Riter,* with whom *Mr. Solicitor General Beck* and *Mr. H. L. Underwood* were on the brief, for the United States.

It is settled that the doctrine of election of remedies is applicable only where a suitor has inconsistent remedies available. When he pursues one of them, he is bound by his election even if that remedy be not efficacious. *Robb* v. *Vos,* 155 U. S. 13, 41, *et seq.*

It is equally well settled that there can not be an election unless inconsistent remedies are available; that the pursuit of a remedy which a party may think himself entitled to, but to which it develops he is not, does not bar the bringing of a suit on the remedy which does

exist.   *Northern Assurance Co.* v. *Grand View Building Association,* 203 U. S. 106; *Bierce* v. *Hutchins,* 205 U. S. 341; *Southern Pacific Co.* v. *Bogert,* 250 U. S. 483; *Bistline* v. *United States,* 229 Fed. 546.

We contend the case comes within the last stated rule. When the United States filed its bill in equity to secure the cancellation of the patents, it was met with a plea by the defendants that the suit was barred because not brought within six years from the date the patents were issued.   Act of March 3, 1891, c. 561, § 8; 26 Stat. 1095, 1099.   The Government asserted that the suit was not barred because it was brought within six years after it had received notice of the fraud.   Cf. *Exploration Co.* v. *United States,* 247 U. S. 435.   The case went to trial and the court held the suit barred because the United States had notice of the fraud more than six years before suit was filed.   It therefore dismissed the bill on that ground.

It is very clear, therefore, that when the suit in equity was filed the United States did not have a right to the remedy therein sought, namely, the cancellation of the patents.   Hence its course in pursuing that supposed remedy does not bar the prosecution of the present suit at law to recover the value of the land.

It is no answer to that proposition to say that when the suit was brought the facts respecting notice were known, or, to be more exact, that knowledge was chargeable to the United States.   Granting that they were known, whether those facts constituted such notice as would operate to set the statute of limitations in motion was a question of law, and because the United States thought the statute not applicable, would not militate against the prosecution of the present suit, its mistake being due to an erroneous view of the law.

The law has not gone so far as to deprive parties of meritorious claims merely because of attempts to collect

them by inappropriate action, upon which recovery could not be had. *McLaughlin* v. *Austin,* 104 Mich. 489, 491. If the rule were otherwise, a mere mistake of judgment would result in depriving one of valuable rights. *Agar* v. *Winslow,* 123 Cal. 587. The instant case closely resembles *Bistline* v. *United States,* 229 Fed. 546. See *Tullos* v. *Mayfield,* 198 S. W. 1073; *Stone* v. *Robinson,* 218 S. W. 5.

The statute of limitations invoked in the equity suit merely barred the remedy but did not extinguish the right of the Government to recover the value of the lands. *United States* v. *Whited & Wheless,* 246 U. S. 552.

Again, the fact that the Government pursued the equity suit to judgment when met with the plea in bar, does not make that judgment *res judicata* in the instant suit, for the sole question decided there was the applicability of the statute of limitations. That was no adjudication of the rights of the Government but only of the availability of the remedy. Statutes of limitation affect the remedy, not the merits. *Townsend* v. *Jemison,* 9 How. 406; *McElmoyle* v. *Cohen,* 13 Pet. 312. A judgment not on the merits is not *res judicata. Cromwell* v. *County of Sac,* 94 U. S. 351.

Furthermore, we suggest that there is not such inconsistency between a suit to recover the lands patented because of fraud and a suit to recover damages for the fraud, as to bar prosecution of the latter. *Friederichsen* v. *Renard,* 247 U. S. 207. In that case it was distinctly pointed out that in a bill in equity to recover lands fraudulently procured, an alternative prayer might be made for the value of the lands.

*Mr. W. Lair Thompson,* with whom *Mr. Wallace McCamant* was on the brief, for Oregon Lumber Company et al.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

This case is here upon a certificate from the Circuit Court of Appeals for the Ninth Circuit, under § 239 of the Judicial Code.

The plaintiff in error brought an action at law against the defendants in error in the United States District Court for the District of Oregon to recover damages for the fraudulent acquisition of certain lands. The complaint was filed in February, 1918, and alleged that the Oregon Lumber Company, a corporation, and certain of its officers, named as co-defendants, unlawfully conspired to acquire certain tracts of land in Oregon, under the Timber and Stone Act of June 3, 1878, c. 151, 20 Stat. 89. The lands were patented in 1900, subsequently conveyed by the patentees to an officer of the defendant corporation, and thereafter (with the exception of a small tract) transferred by such officer to the corporation. The value of the lands was alleged to be $65,000 and judgment was asked for this amount.

The answer denied the material allegations of the complaint and pleaded, among other things, as separate defenses: "(1) that *pro tanto* to the measure of damages the United States received from the several entrymen named in the complaint the aggregate sum of $16,400, which was the price fixed by law and the practices in the land office for the lands described in the complaint; (2) that in October, 1912, the United States brought suit in equity to set aside the patents for the lands and alleged that it owned the property described in the complaint herein and that the patents for the lands which are the same as are involved in this action were secured through fraud of the defendants named in the present action and others, and prayed for the cancellation of the patents; that in the equity suit substantially the same facts were pleaded as are pleaded by the United States in this action; that issue was joined in the equity suit; that in 1916, after trial upon the merits, the District Court dismissed the equity

suit for the reason that the United States had had full knowledge of the matters complained of in its complaint for more than six years before the equity suit was instituted, and that no appeal was ever taken from the decree dismissing the complaint of the United States."

The plaintiff in error demurred to these separate defenses, and, the District Court having overruled the demurrer and the plaintiff in error having declined to plead further, the court dismissed the complaint and judgment was entered.

The District Court, in rendering its judgment, decided that, inasmuch as the suit in equity was brought by the United States with knowledge of all the facts, it constituted an election final and conclusive.

Upon these facts the following questions are propounded by the Circuit Court of Appeals:

" 1. Is an action by the United States for the value of lands as damages, against the patentees for the lands for fraudulent acquisition of the lands patented under the timber and stone act, barred where more than six years have elapsed after the United States, with knowledge of the fraud, brought a suit in equity to cancel the patents for the same lands, in which equity suit decree of dismissal was made against the United States on the ground that the suit was barred by the statute of limitations?

" 2. If the foregoing question be answered in the negative, should any damages recoverable be reduced by such amounts as the United States may have received from the entrymen, as the price fixed by law for the lands described in the patents? "

Upon the facts stated the sale was voidable (*Moran* v. *Horsky,* 178 U. S. 205, 212), and the plaintiff in error was entitled either to disaffirm the same and recover the lands or affirm it and recover damages for the fraud. It could not do both. Both remedies were appropriate to the facts, but they were inconsistent since the first was founded

upon a disaffirmance and the second upon an affirmance of a voidable transaction. *Robb* v. *Vos,* 155 U. S. 13, 43; *Connihan* v. *Thompson,* 111 Mass. 270, 272. 2 Black on Rescission and Cancellation, § 562, and cases cited. The rule is applicable to the Government in cases where patents have been procured by fraud. *United States* v. *Koleno,* 226 Fed. 180, 183. Any decisive action by a party, with knowledge of his rights and of the facts, determines his election in the case of inconsistent remedies, and one of the most unequivocal of such determinative acts is the bringing of a suit based upon one or the other of these inconsistent conclusions. *Robb* v. *Vos, supra.*

It is suggested in the brief for the plaintiff in error that there is not such inconsistency between a suit to recover lands patented because of fraud and an action to recover damages for the fraud as to bar the latter, citing *Friederichsen* v. *Renard,* 247 U. S. 207. That case, however, lends no support to the suggestion. The petitioner, Friederichsen, brought suit to cancel a contract for the exchange of lands, on the ground of fraud practiced upon him. Upon the coming in of the report of the master it appeared that petitioner, pending suit, had cut a considerable amount of timber growing upon the lands which he had taken in exchange. Thereupon the court found that he was not entitled to equitable relief because, by cutting the timber, he had ratified the contract and had rendered it impossible to put the defendant in *statu quo,* but his remedy was at law for damages. The court ordered that the master's report be vacated and the case transferred to the law side of the court, pursuant to Equity Rule 22, and that the parties " file amended pleadings to conform with an action at law." The question was there presented for decision whether this was the commencement of a new action, so as to bring it within the bar of the statute of limitations, and it was determined in the negative. Holding further

that under the circumstances the doctrine of election of
remedies did not apply, this Court said:

"Thus, we are brought to the conclusion that since the
two remedies asserted by the petitioner were alternative
remedies, and since the order made, requiring the conver-
sion of the suit in equity into one at law, was entered by
the court sitting in chancery, for us to affirm the judgment
of the Circuit Court of Appeals that the petitioner, in
obeying the order of the trial court, made a fatal choice of
an inconsistent remedy, would be to subordinate sub-
stance to form of procedure, with the result of defeating
a claim which the respondents stipulated had been suffi-
ciently established to justify a verdict against them. This
we cannot consent to do."

But here in the equity suit, the plaintiff in error upon
the coming in of the defendant's plea of the statute of
limitations made no offer to amend or request to transfer
the case to the law docket, but proceeded to trial and
judgment upon the original bill, with knowledge of all the
facts for more than six years prior to the filing of its bill.
Defeated in its equity suit, it brought its action at law
upon the same allegations of fact. We think it is not
admissible to thus speculate upon the action of the court,
and, having met with an adverse decision, to again vex
the defendant with another and inconsistent action upon
the same facts.

The justice of enforcing the doctrine of election of rem-
edies in this case is emphasized by a consideration of the
facts: The lands in question were conveyed by the United
States in the year 1900. It was not until 1912 that the
first suit was brought. The judgment, dismissing the bill
in that suit, was rendered in 1916, and the present action
was brought two years later. Thus a period of eighteen
years had elapsed since the transfer of the lands before
the present action was begun, during more than two-
thirds of which time the United States had possessed

knowledge of all the facts upon which the plea of the statute of limitations was founded and sustained.

The mere filing of the bill in the first suit, according to many authorities, did not constitute an irrevocable election. But upon ascertaining from their plea that the defendants intended to rely upon the statute of limitations, and having knowledge of the facts upon which that plea was founded, and thereafter sustained, the plaintiff in error had fairly presented to it the alternative: (a) of abandoning that suit and beginning an action at law or transferring it to the law side of the court and making the necessary amendments to convert it into an action for damages, as a " mere incident in the progress of the original case," (247 U. S. 210); or (b) of proceeding with the original case upon the issues as they stood. The plaintiff in error deliberately chose the latter alternative. If the election was not final before, it became final and irrevocable then. *Rehfield* v. *Winters,* 62 Ore. 299, 305–306; *Bowker Fertilizer Co.* v. *Cox,* 106 N. Y. 555, 558–559; *Moss* v. *Marks,* 70 Neb. 701, 703.

The case of *Bistline* v. *United States,* 229 Fed. 546, relied upon by the plaintiff in error, is not in conflict with this conclusion. That was an action by the Government to recover damages for the fraudulent acquisition of certain public lands. A prior suit had been brought in equity to cancel the patent, but the defendant's answer showed that the land had been conveyed to persons not made parties to the suit. The Government thereupon promptly dismissed its suit in equity and, on the same day, commenced the action at law for damages. If, in the instant case, a like course had been followed upon the coming in of the defendant's answer pleading the statute of limitations, the case just referred to would have been in point.

Northern Assurance Co. v. Grand View Building Association, 203 U. S. 106; *William W. Bierce, Limited,* v. *Hutchins,* 205 U. S. 340; and *Southern Pacific Co.* v. *Bo-*

*gert,* 250 U. S. 483, cited by plaintiff in error in support of
its contention, are all distinguishable from the case now
under consideration. In *Northern Assurance Co.* v. *Grand
View Building Association, supra,* an action at law had
been brought to enforce an insurance policy, but it was
held that no recovery could be had on the policy as it
stood. Thereupon a suit was brought to reform the policy
and enforce it as reformed. It was held that there was
no inconsistency between these two remedies; and clearly
there was not, since both cases proceeded in affirmance
of the contract. In *William W. Bierce, Limited,* v.
*Hutchins, supra,* there had been a conditional sale. Plain-
tiff first undertook to enforce a lien upon the property
and later brought an action in replevin. It was held there
was no election because plaintiff could not enforce a lien
upon property to which it had title. This Court said: "It
[appellant] could not obliterate the condition and leave
the contract in force. It may be that it had an election to
avoid the contract altogether, but, if so, it did not attempt
to do it. It insisted on the contract as the ground of its
claim to a lien for the price of the goods. The election
supposed and relied upon is an election to keep the con-
tract in force, but to leave out the reservation of title.
. . . But the assertion of a lien by one who has title, so
long as it is only an assertion and nothing more, is merely
a mistake. It does not purport to be a choice, and it can-
not be one because the party has no right to choose. The
claim in the lien suit, as was said in a recent case, was not
an election but an hypothesis." In *Southern Pacific
Co.* v. *Bogert, supra,* there had been much prior litiga-
tion over the same subject-matter. It was contended that
the plaintiffs were bound as privies to this litigation. As
appears by the decision of the lower court (*Bogert* v.
*Southern Pacific Co.,* 244 Fed. 61) the grievance alleged
in the prior suits was a corporate grievance. Each of the
suits was dismissed on the ground that the decree of fore-

closure involved could not be attacked collaterally. The Bogert suit, however, was a suit on behalf of the minority stockholders, asserting no corporate right of the railway company, but only the right of minority stockholders. The right asserted in the prior suits and that asserted in the Bogert suit were, therefore, the rights of different parties.

It is further urged that the judgment of the District Court was not upon the merits but upon the plea in bar and that, therefore, when the equity suit was begun, plaintiff in error had no choice of remedies, since the judgment rendered established that in fact there was no remedy in equity at all. The contention, we think, is unsound.

The defense of the statute of limitations is not a technical defense but substantial and meritorious. The great weight of modern authority is to this effect. *Lilly-Brackett Co.* v. *Sonnemann,* 157 Cal. 192; *Wheeler* v. *Castor,* 11 N. Dak. 347, 353, *et seq.,* where the authorities are reviewed.

Such statutes are not only statutes of repose, but they supply the place of evidence lost or impaired by lapse of time by raising a presumption which renders proof unnecessary. *Bell* v. *Morrison,* 1 Pet. 351, 360; *Hanger* v. *Abbott,* 6 Wall. 532, 538; *Wood* v. *Carpenter,* 101 U. S. 135, 139; *Riddlesbarger* v. *Hartford Insurance Co.,* 7 Wall. 386, 390. And see *United States* v. *Chandler-Dunbar Water Power Co.,* 209 U. S. 447, 450.

In *Wood* v. *Carpenter,* this Court said:

" Statutes of limitation are vital to the welfare of society and are favored in the law. They are found and approved in all systems of enlightened jurisprudence. They promote repose by giving security and stability to human affairs. An important public policy lies at their foundation. They stimulate to activity and punish negligence. While time is constantly destroying the evidence

of rights, *they supply its place by a presumption which renders proof unnecessary.* Mere delay, extending to the limit prescribed, is itself a conclusive bar. The bane and antidote go together."

In *Riddlesbarger v. Hartford Insurance Co.:*

"They are founded upon the general experience of mankind that claims, which are valid, are not usually allowed to remain neglected. The lapse of years without any attempt to enforce a demand creates, therefore, a presumption against its original validity, or that it has ceased to subsist. This presumption is made by these statutes a positive bar; and they thus become statutes of repose, protecting parties from the prosecution of stale claims, when, by loss of evidence from death of some witnesses, and the imperfect recollection of others, or the destruction of documents, it might be impossible to establish the truth."

In *Parkes v. Clift,* 9 Lea (Tenn.) 524, it was held that a decree dismissing a bill on the ground of lapse of time was a judgment upon the merits. The court said (pp. 531, 532):

"In order that a judgment or decree should be on the merits, it is not necessary that the litigation should be determined ' on the merits,' in the moral or abstract sense of these words. It is sufficient that the status of the action was such that the parties might have had their suit thus disposed of, if they had properly presented and managed their respective cases . . . A finding against a party, either upon final hearing or demurrer, that his cause of action as shown by him, is barred by the statute of limitations or by laches is a decision upon the merits, concluding the right of action." See also *People ex rel. Best v. Preston,* 62 Hun, 185, 188–189; *Black v. Miller,* 75 Mich. 323, 329.

Whether based on a plea of the statute of limitations or on a failure to prove substantive allegations of fact, there-

fore, the result of the judgment is the same, viz: that plaintiff has no case; and to hold that plaintiff may then invoke another and inconsistent remedy is not to recognize an exception to the general operation of the doctrine of election of remedies but to deny the doctrine altogether. Here, upon the facts as stated in the bill in equity and later in the action at law, both remedies were available to the plaintiff in error. In electing to sue in equity plaintiff in error proceeded with full knowledge of the facts, but it underestimated the strength of its cause, and if that were sufficient to warrant the bringing of a second and inconsistent action the result would be to confine the defense of election of remedies to cases where the first suit had been won by plaintiff and to deny it in all cases where plaintiff had lost. But the election was determined by the bringing and maintenance of the suit, not by the final disposition of the case by the court. See for example *Bolton Mines Co.* v. *Stokes,* 82 Md. 50, 59.

The distinguishing feature of the instant case is that after the coming in of the answer, pleading the statute of limitations, and the plain warning thus conveyed of the danger of continuing the equity suit further, the plaintiff in error persisted in pursuing it to final judgment, instead of promptly reforming the cause or dismissing the bill and seeking the alternative remedy not subject to the same defense. The doctrine of election of remedies and that of *res adjudicata* are not the same, but they have this in common, that each has for its underlying basis the maxim which forbids that one shall be twice vexed for one and the same cause. The policy embodied in this maxim we think requires us to hold that the plaintiff in error, in bringing the original suit, and in continuing after the plea in bar to follow it to a final determination, made an irrevocable election, and that it is now estopped from maintaining the present inconsistent action.

Question No. 1 is somewhat ambiguous but taken in connection with the facts, it is clear that what the Circuit

Court of Appeals desires to know is whether the action at law by the United States to recover the value of lands, the title to which was fraudulently obtained, is barred for the reason that the United States, with knowledge of the fraud, had previously prosecuted, upon the same facts, a suit in equity to final judgment of dismissal rendered on the ground that the suit was barred by the statute of limitations?  This question we answer in the affirmative, and, as this disposes of the case, no answer to question No. 2 is required.

*It will be so certified.*

MR. JUSTICE BRANDEIS dissenting, with whom THE CHIEF JUSTICE and MR. JUSTICE HOLMES concur.

The general rule that statutes of limitation do not run against the United States often works hardship.  The rule proved so oppressive when applied to proceedings to annul patents to land, that Congress erected for such suits the six-year bar.  Act of March 3, 1891, c. 561, § 8, 26 Stat. 1095, 1099.  In *Exploration Co., Limited,* v. *United States,* 247 U. S. 435, the act was construed to mean that the six years do not begin to run until the cause of action is discovered.  This statute did not in terms extend the bar to the Government's remedy at law.  *United States* v. *Whited & Wheless,* 246 U. S. 552, held that the law gave two remedies to protect the single right, and that the Act of 1891 left intact the remedy at law for deceit practiced in securing the patent.  The Court, therefore, permitted recovery at law, although the remedy in equity had been barred.

The fraud here involved was practiced in connection with the acquisition of land patented in 1900.  To obtain redress the Government brought in 1912 a bill in equity to annul the patent.  Defendants pleaded the statutory bar.  The Government might then have dismissed its bill; and if it had done so, it could then unquestionably have com-

menced an action at law for deceit.[1]  Or, the Government might, under the Act of March 3, 1915, c. 90, 38 Stat. 956, and Equity Rule 22, have then had the case transferred to the law side of the court, and have thus freed itself from the possibility of a statutory bar.  It did not do either. Instead, it proceeded to a hearing in the equity suit; presumably, because it considered the legal remedy inadequate and believed that it could establish its right to pursue the equitable remedy by showing that the fraud had been discovered within the six years.  In this the Government proved to be mistaken.  The court found that the United States had full knowledge of the matters complained of more than six years before the suit was begun, and for that reason could not have the relief sought in equity.  Even then—after the adverse decision but before entry of a decree—it was not too late to transfer the pending suit to the law side of the court, and to proceed there with the action for deceit.  Such a transfer, after full hearing on the merits and a decision that relief in equity could not be had, was made without loss of any right in *Friederichsen* v. *Renard*, 247 U. S. 207.  But the Government made no such application; the court entered a decree dismissing the bill; and no appeal was taken.  Then, in 1918, the Government brought the present action at law.  The question now presented for decision is whether it had lost the right to do so.

The thing adjudged in the equity case was solely that the fraud had been discovered by the Government more than six years before the commencement of the suit; and that, for this reason, the patent could not be annulled. There was no adjudication of the Government's substantive right.  And since it had two remedies to protect that right, and the fact found is not a bar to an action at law, no suggestion is made that the decree of dismissal bars this action as *res judicata*.  There is likewise no sugges-

---

[1] See *Bistline* v. *United States*, 229 Fed. 546.

tion of an estoppel *in pais*. Nor is there a suggestion that
by proceeding to a hearing in the equity suit, or by fail-
ing to ask that the case be transferred to the law side of
the court, the Government subjected defendants to any
annoyance or expense, other than that necessarily inci-
dent to unproductive litigation. The remedy at law is
denied solely on the ground that the so-called doctrine of
election of remedies applies; that the Government had
two remedies; that the two remedies were inconsistent;
that when the statutory bar was pleaded in equity, the
plaintiff was obliged, at its peril, to make a final choice
between the two remedies; and that since it selected the
one which proved not to be available, it shall have no
remedy whatsoever.

The doctrine of election of remedies is not a rule of sub-
stantive law. It is a rule of procedure or judicial admin-
istration. It is technical; and, as applied in some jurisdic-
tions, has often sacrificed substantial right to supposed
legal consistency.[1] The doctrine has often been invoked
in this Court, but never before successfully. Its existence
has been recognized; but in every case in which the ques-
tion presented was actually one of election of remedies,
this Court held that the doctrine did not apply; giving
as a reason that one or the other of its essential elements
was absent. These essentials are that the party must
have actually had two remedies and that the remedy in
question must be inconsistent with the other previously
invoked. Here neither of these essential elements was
present.

The Government did not have a remedy in equity when
the suit to annul the patent was begun or at any time
thereafter. That this is true was established by the de-

---

[1] See Election of Remedies, A Criticism, by Charles P. Hine, 26
Harv. Law Rev. 707; Election between Alternative Remedies by
Walter Hussey Griffith, 16 Law Quar. Rev. 160; *ibid.* by J. F. W.
Galbraith, 16 Law Quar. Rev. 269.

cree in the equity suit. The Government's alleged choice of the equitable remedy was, therefore, "not an election but an hypothesis." *Northern Assurance Co.* v. *Grand View Building Association*, 203 U. S. 106, 108; *William W. Bierce, Limited,* v. *Hutchins*, 205 U. S. 340, 347. For " it is impossible to conceive of a right of election in a case where no such right existed." *Friend* v. *Talcott,* 228 U. S. 27, 37, 38. Thus, the mere fact that the remedy first invoked was at the time unavailable precludes application of the doctrine. The reason why it was unavailable is immaterial. A party is equally free to try another remedy, whether the earlier proceeding was futile because of inability to establish assumed facts essential to the existence of the remedy then pursued or because the assumed facts did not as matter of law entitle him to the relief sought.[1] In the *Northern Assurance Case, supra,* the earlier action at law was held not to be an election, because the facts there relied on could not be proved. In the *Bierce Case, supra,* filing an earlier lien suit was held not to be an election, because one cannot have a lien on one's own property. In *Friederichsen* v. *Renard, supra,* suing to set aside the conveyance was not an election, because the right to rescind had been lost. In *Southern Pacific Co.* v. *Bogert,* 250 U. S. 483, 490, 491, the earlier unsuccessful suits were not an election because facts there essential could not be established. So, in the case at bar, because the equitable remedy theretofore invoked was not in fact available to the Government, its right to pro-

---

[1] *Barnsdall* v. *Waltemeyer,* 142 Fed. 415, 420; *Water, Light & Gas Co.* v. *Hutchinson,* 160 Fed. 41, 43; *Harrill* v. *Davis,* 168 Fed. 187, 195; *Brown* v. *Fletcher,* 182 Fed. 963, 971–974; *Rankin* v. *Tygard,* 198 Fed. 795, 806; *Union Central Life Ins. Co.* v. *Drake,* 214 Fed. 536, 548; *Agar* v. *Winslow,* 123 Cal. 587, 590; *Capital City Bank* v. *Hilson,* 64 Fla. 206; *Asher* v. *Pegg,* 146 Iowa, 541, 543; *Hillerich* v. *Franklin Ins. Co.,* 111 Ky. 255; *Clark* v. *Heath,* 101 Me. 530; *Wilson* v. *Knapp,* 143 Mich. 64; *Kelsey* v. *Agricultural Ins. Co.,* 78 N. J. Eq. 378, 383.

45646°—23——20

ceed at law was not lost, under the doctrine of election of remedies.[1]

Moreover, an action at law for deceit is not inconsistent with a prior unsuccessful suit to annul the patent. This case must not be confused with those in which it has been held that a prior action at law on a contract, or other proceeding arising out of it, bars a later suit to rescind; as where an action on a purchase money note has been held to bar a later suit by the vendor to set aside the conveyance for fraud. There, the reason why the conveyance cannot be set aside is that by suing at law the vendor exercises his option to affirm the voidable transaction, and cannot thereafter disaffirm it. In so doing he makes a choice of substantive rights. But where the vendor's first attempt to obtain redress was by way of rescission, and there was in fact then no right to rescind, his substantive rights have not been changed.[2] This is the situation presented in the case at bar. The Government said, in effect: "We wish to rescind and get back the land; but if the facts, or the law are such that we cannot rescind, then we wish to recover damages for the deceit." Certainly that is not taking inconsistent positions. See *United States* v. *Whited & Wheless, supra,* pp. 562, 564. Indeed, an action for damages might be permissible as a supplemental remedy even if the equitable relief had been granted.[3] For annulling the patent may fail to give the Government

---

[1] In *Strong* v. *Strong,* 102 N. Y. 69, 73, an earlier proceeding to rescind was held not to be an election, because by reason of laches and lack of tender there was then no right to rescind.

[2] *Zimmerman* v. *Robinson & Co.,* 128 Iowa, 72; *Marshall* v. *Gilman,* 52 Minn. 88, 97; *Tullos* v. *Mayfield,* 198 S. W. 1073 (Tex. Civ. App.); *Griffin* v. *Williams,* 142 S. W. 981 (Tex. Civ. App.) Compare *McGibbon* v. *Schmidt,* 172 Cal. 70; *Glover* v. *Radford,* 120 Mich. 542, 544; *Freeman* v. *Fehr,* 132 Minn. 384, 388. See *Cohoon* v. *Fisher,* 146 Ind. 583; *Conrow* v. *Little,* 115 N. Y. 387.

[3] See *Crockett* v. *Miller,* 112 Fed. 729, 736; *Lenox* v. *Fuller,* 39 Mich. 268, 273.

full relief. The land may have been stripped, meanwhile, of its trees or its mineral; or the deceit may have involved the Government in expenses which are recoverable. It is true that under such circumstances equity, if it annulled the patent, would probably retain the cause to award recovery for all damages as suffered. But it might leave the vendor to his remedy at law; and conversely the vendor might, if he chose, limit his suit in equity to the recovery of the property. In either event he could recover his damages at law. Compare *Brady* v. *Daly,* 175 U. S. 148, 161; *Thomas* v. *Sugarman,* 218 U. S. 129; *Zimmerman* v. *Harding,* 227 U. S. 489, 493. There is, therefore, lacking here inconsistency of remedies; and for that reason, also, the doctrine of election of remedies does not apply.

There are some cases in this Court, earlier than those discussed above, in which the doctrine of election of remedies was referred to when denying the relief sought. But in those cases, of which *Robb* v. *Vos,* 155 U. S. 13, is an example, relief was not denied because of a previous election of an inconsistent remedy. The party failed because he had theretofore made a choice of an alternative substantive right; as where one by his conduct ratifies and makes valid an unauthorized transaction otherwise void. In such cases the mere fact that the conduct relied upon consisted, in whole, or in part, of legal proceedings, is of no legal significance in this connection.[1]

---

[1] Thus in *Robb* v. *Vos,* 155 U. S. 13, 34, 39, the question was whether Robb and Strong, trustees, by filing an answer and cross petition in another suit had ratified Kebler's want of authority, and therefore made the title of Vos and Stix to the land in question good. In *Van Winkle* v. *Crowell,* 146 U. S. 42, 51, the commencement of a suit to enforce a mechanics' lien was an election to treat the title to property sold under conditional sale as having passed to the purchaser. In *Stuart* v. *Hayden,* 169 U. S. 1, commencement of an action which was deemed in effect an action for the purchase price, was

Because the Government had, as now appears, no remedy except the action at law for deceit, and also because this remedy is not inconsistent with an earlier vain attempt to rescind, a denial of the right to prosecute the present action cannot, consistently with the earlier decisions of this Court, rest upon the doctrine of election of remedies. Support for the denial is sought in the fact that the Government did not abandon its futile attempt to annul the patent, when it was advised by the defendants' answer that they proposed to rely upon the statutory bar. But it is well settled that a party may disregard such a warning. If he deems it doubtful which one of several possible courses will lead to relief he may (even where the courses are inconsistent) follow one to defeat; and still pursue thereafter another remedy until he ultimately finds the one which will afford him redress; provided always that the facts do not create an equitable estoppel.[1] There is, of course, no suggestion here, that the

---

held to have ratified a sale of real estate, which the plaintiff later attempted to rescind. In *Peters v. Bain*, 133 U. S. 670, 683, 695, it was held that there was no election of remedies. *Green v. Bogue*, 158 U. S. 478, was a case of *res judicata*. In *Dickson v. Patterson*, 160 U. S. 584, 588, 592, there was only one remedy involved. The question was whether plaintiff had elected to ratify the transaction after knowledge of the fraud. In *Dahn v. Davis*, 258 U. S. 421, the question was one of statutory construction; namely, whether an employee injured during federal control of the railroad had a right to compensation under both the Employers' Liability Act and the Compensation Act, or only under one.

[1] *Strong v. Strong*, 102 N. Y. 69, 73; *Henry v. Herrington*, 193 N. Y. 218; *Snow v. Alley*, 156 Mass. 193, 195; *Clark v. Heath*, 101 Me. 530; *Wilson v. Knapp*, 143 Mich. 64; *Glover v. Radford*, 120 Mich. 542, 544; *Sullivan v. Ross' Estate*, 113 Mich. 311, 319; *Lenox v. Fuller*, 39 Mich. 268; *Marshall v. Gilman*, 52 Minn. 88, 97; *Garrett v. Farwell Co.*, 199 Ill. 436; *Zimmerman v. Robinson & Co.*, 128 Iowa, 72; *American Pure Food Co. v. Elliott & Co.*, 151 N. Car. 393; *Tullos v. Mayfield*, 198 S. W. 1073 (Tex. Civ. App.); *Griffin v. Williams*, 142 S. W. 981 (Tex. Civ. App.); *Rankin v. Tygard*, 198 Fed. 795.

Government acted in bad faith in refusing to abandon the equitable remedy until the trial court had decided the issue of knowledge against it. The Government gained nothing, the defendants lost nothing, by the bringing of the futile suit in equity to annul the patent. However stupid or stubborn a party may have been, he is not deprived of the right to try another remedy; for whatever the cause of his earlier futile attempt, his failure proves him to have been mistaken. To hold that this action for deceit is barred, because the Government did not dismiss the earlier equity suit when it was advised by the answer that the statutory bar would be relied on, lays down a rule new in this Court,—a rule inconsistent with the principles heretofore established and opposed to a long line of well considered decisions in state courts. To do this seems to me regrettable.